UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

98 APR -7  AM 2: 55

U.S. DISTRICT COURT
N.D. OF ALABAMA

NORTH AMERICAN SPECIALTY INSURANCE )
COMPANY OF NEW HAMPSHIRE, )
)
)
   Plaintiff, )
) CV 97-PT-2061-M
vs. )
) **ENTERED**
KATHY ALRED and BUDDY ALRED, )
) **APR 7 - 1998**
   Defendants. )

Memorandum Opinion

    This cause comes on to be heard on a motion for summary judgment filed by plaintiff North American Specialty Insurance Company of New Hampshire ("North American") on December 24, 1997. In its motion, the plaintiff contends that no genuine issues of material fact exist contrary to its position that its "Flagship Policy" does not cover certain damage to the boat of the defendants, Kathy Alred and Buddy Alred ("Alreds"). The defendants, by contrast, contend that facts exist supporting the proposition that the "Flagship Policy" of the plaintiff does cover the damage.

    On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing there exists a genuine issue for trial. Celotex, 477 U.S. at 324; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any..." in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993)

In light of the above, this court must examine the evidence to determine the existence of a genuine issue of material fact.

## Facts

As stated by the non-movant, the facts are these: Mr. Alred delivered the Alreds' boat, the *North Star*, to Garris Propeller Service in Gulf Shores, Alabama, for repair work on February 17, 1996. The repair work was conducted pursuant to a contract between Mr. Alred and the apparent owner of the repair service, Joe Ray Garris. In early April, 1996, the work was completed and the contract price for the repairs was paid in full. Within a couple of days, Mr. Alred discovered that Mr. Garris had improperly done the repair work on the boat, chipping the inside of the vessel rather than sandblasting

2

it.[1] Mr. Alred also discovered a leak, possibly related to the earlier repair work.

On April 8, 1996, Mr. Alred spoke with Mr. Garris about the improper work on the *North Star* and about the leak that the boat had sprung. Mr. Alred and Mr. Garris agreed that Mr. Garris would return $6000.00 of the contract price to Mr. Alred for the improper workmanship in return for Mr. Alred executing a release drafted by Mr. Garris.

On April 9, 1996, the *North Star* was returned to Garris Propeller Service for repair of the leak. Before that work was begun, Mr. Alred signed the release agreement and received a check for $6000.00. In relevant part, that agreement reads:

> WHEREAS, a bona fide dispute exists between the parties concerning repairs commencing February 17, 1996 performed by GARRIS on the *North Star*, a marine vessel owned by ALRED, according to a contractual agreement between the parties at a total contract price of $22,012.28 (the "Contract"); and
> WHEREAS, the parties have settled the dispute regarding the Contract and ALRED desires to release GARRIS from all liability concerning said dispute.
> NOW, THEREFORE, in consideration of the payment to ALRED by GARRIS of $6000.00, and in consideration of the mutual promises and agreements herein contained, including recitals set forth above, the parties agree as follows:
>     1.    Subject only to paragraph 2, below, ALRED hereby forever releases and discharges GARRIS, its subsidiaries, successors, agents and assigns, and all persons, firms or corporations liable or who might be claimed liable, none of whom admit any liability to ALRED but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind and nature whatsoever, and particularly on account of injuries, known and unknown, both to person and property, which have resulted or may in the future develop and in any way related to the Contract.
>     2.    GARRIS disclaims all warranties regarding repairs to or condition of the *North Star* with the exception of work actually performed by GARRIS.
>     3.    The undersigned hereby declare that the terms of this Agreement have been completely read and are fully and voluntarily accepted for the purpose of making a full and final compromise settlement of any and all claims by ALRED and against GARRIS, disputed or otherwise, on account of the dispute above mentioned, and for the express purpose of precluding forever any further or additional claims by ALRED and against GARRIS arising out of the aforesaid dispute.

Mr. Garris proceeded to repair the leak. To perform the repair work, Mr. Garris hoisted the

---

[1] Apparently, the value of sandblasting the interior of a vessel rather than chipping it lies in the fact that sandblasting the interior removes all of the deteriorization from the interior of the vessel and makes weak spots in the hull obvious. Chipping is performed with a chipping hammer and, apparently, is not as thorough a technique for removing deteriorization from the hull of a boat.

*North Star* from the water five or six times with a lifting horse. Six sixteen-inch wide straps were placed beneath the *North Star* to secure it while it was lifted from the water. Due to a sharp flare in the sides of the boat where the hull and deck join, flare blocks were placed under the flare to ensure that the straps did not constrict the hull.

As some point while the *North Star* was being raised, the flare blocks slipped and the front strap "turned in the bulwark slightly." Mr. Alred and Mr. Garris inspected the damage to the boat created by the slippage and determined that it consisted of a crack in the paint on the boat. Mr. Garris then gave Mr. Alred a check for $600.00 with which to repair the damage.

On May 22, 1996, Mr. Alred inquired of Alred Service, Inc., the cost to repair the crack to the paint. At that time, it became apparent that Mr. Alred and Mr. Garris were incorrect in their assessment of the damage to the *North Star* caused by the slippage of the flare blocks. The damage done by the slippage was extensive. Where the straps of the lifting horse were placed, the hull was crumpled and the bottom plates of the vessel were concaved. The cost of repair has been estimated at over $70,000.00. One week later, on May 29, 1996, Mr. Alred notified North American of the damage to the *North Star*. A few days later, on June 6, 1996, the insurer sent an appraiser to determine the damage.[2]

In February of 1997, Mr. Alred took the *North Star* to SeeFab in Pascagoula, Mississippi. While there, the keel of the boat was apparently damaged to some degree. The parties dispute whether and how much of the damage to the keel was caused not by SeeFab, but by Garris Propeller Service.

The *North Star* is insured under North American's "Flagship Policy", section H of which reads, in relevant part:

> Impairment of Recovery. If you agree to give up your rights or to recover damages from any carrier, bailee, or other party who may be liable to you, this policy will be considered void and will be without effect as to such loss.

Contentions & Analysis

North American denies an obligation to pay the Alreds for damage to the *North Star* for two

---

[2] The defendants note that in past dealings with the insurer, he had not been required to fill out a claim form.

reasons. First, argues North American, Mr. Alred executed a release for damage to the boat, thereby rendering the policy void with respect to that damage. Second, the plaintiff argues that the Alreds failed to give them immediate written notice.

I. NAVIGATING RELEASES ON THE *NORTH STAR*.

North American claims that § H of its Flagship Policy permits it to declare the policy void with respect to any damage caused by Garris Propeller Service because Mr. Alred released Garris Propeller Service from liability for the damage to the *North Star*. Mr. Alred purportedly released Garris Propeller Service from liability for damages caused to the *North Star* by either (1) executing the release agreement or (2) accepting Garris's $600.00 check for repair of the paint crack caused by the hoist straps.

The Alreds contend that the damage caused to the *North Star* by the hoist straps is compensable under the policy because Mr. Alred did not release Garris Propeller Service from liability for any damage to the boat outside of that damage caused while Garris Propeller Service performed under the repair contract. First, the Alreds reply, the release agreement extended only to damages arising out of the contract work done by Garris Propeller Service, not to negligence related to its subsequent repair of the leak. Second, the Alreds argue, the check for $600.00 was only meant to pay for the crack in the paint caused by the slip of the flare blocks, not any subsequent damage resulting from the slippage.

A.   THE WRITTEN RELEASE.

There is no dispute that if the release executed by Mr. Alred covers the damage incurred to the *North Star* by the hoist straps, the policy is without effect as to that damage. However, a genuine issue of material fact exists as to whether that damage was covered in the release agreement.

The issue of whether the language of a release is ambiguous or not is a threshold issue of law for this court. Wayne J. Griffin Electric, Inc. v. Dunn Construction Co., 622 So.2d 314, 316 (Ala. 1993). If the court finds the release unambiguous, its interpretation is a matter of law that may be decided on summary judgment. Id. at 317. The release in this case exhausts only those claims of Mr. Alred "which have resulted or may in the future develop and in any way related to the Contract" (emphasis added). "In ascertaining the intent of the parties, the plain and clear meaning of the terms

of the document must be given effect, and the parties must be presumed to have intended what is plainly and clearly set out in the document." Id. The language of the release is unambiguous; Garris Propeller Service was only released from liability for actions performed under the earlier contract. The language of the release does not contemplate release from liability of any later damage to the *North Star*. The defendants allege that damage sustained due to the slippage was caused while Garris Propeller Service was attempting to repair a leak that was not the subject of the earlier contract and that a genuine issue of fact exists that the hoist strap damage is not covered by the release agreement.

B.  CHECKING CRACKS IN THE FIRMAMENT.

A question exists whether Mr. Alred's acceptance of the $600.00 check given him by Mr. Garris to fix the paint damage caused by the hoist straps acted as an accord and satisfaction for all of the damage caused by the hoist straps. Both parties agree that the principles governing the validity of contracts under Alabama law are determinative of whether the acceptance by of the check to repair the crack in the paint caused by the hoist straps constituted an accord and satisfaction. See Ray v. Alabama Credit Union, 472 So.2d 1012, 1014 (Ala. 1985).

> A valid accord and satisfaction is premised upon there being an express or implied contract between the parties. It follows, then, that in order for there to be a valid accord and satisfaction, there must be 1) proper subject matter; 2) competent parties; 3) assent or meeting of the minds; and 4) consideration.

Bank Independent v. Byars, 538 So.2d 432, 435 (Ala. 1988). There is no doubt that the potential tort liability of Garris for damaging the boat is an appropriate subject for an accord and satisfaction, that the parties to the drafting of the $600.00 check were competent parties and that the $600.00 check was consideration for the relinquishment of some right having to do with the *North Star*. What is in issue is whether Mr. Alred and Mr. Garris agreed to the subject matter of which the contract consisted.[3]

---

[3] In their briefs, the parties use the terms accord and satisfaction and release to refer to the same events. In the present instance of an oral release of a disputed claim, the elements are functionally the same. Although a release is generally a mere relinquishment of a right, disputed or not (although usually disputed), with or without the support of consideration, under Alabama law, an oral release has as one of its requirements a consideration given by the released party for the release. See Ala. Code § 8-1-23. The only issue, therefore, concerning the release is whether the actions of the parties to the averred release manifested an intent to relieve Garris Propeller Service of all liability for damage later manifesting to the *North Star* as a result of the slippage of the flare blocks. Under the law governing accord and satisfaction, whether a lesser or different consideration will be satisfaction nullifying an existing obligation depends on

6

The check given by Mr. Garris to Mr. Alred contains no indicia that it was to be treated as a release or as satisfaction for all the potential claims of Mr. Alred arising from the slipping of the flare blocks and consequent compression by the straps. Any determination of the intended terms of the release or accord must be gathered from the actions of the parties at the time of the negotiation. North American states that the intent of the parties was that the $600.00 satisfy the Alreds' claim of damages to the boat, including any claim for unnoticed damages. The Alreds claim that the agreement was merely intended to cover the crack in the paint.

Generally, resolution of such an issue is a fact-intensive decision to be made by the court at trial. Several factual matters are undisputed. At the time that the agreement was made, the only apparent damage caused by slippage of the flare blocks was a crack in the paint on the *North Star*. The damage referred to by both parties in their negotiations at the time was the paint crack. There is no indication that later possible manifestations of the slippage were even discussed. The alternative meaning of "damage" referred to by North American came into existence after the negotiations, when other manifestations of damage occurred. The issue for this court then is whether, in the absence of an reference to subsequent undiscovered damage or undiscussed liability, a release or accord for presently ascertained damages constitutes a release from liability for subsequently discovered damages arising from the same occurrence.

There are no cases on this issue from the Alabama courts. However, cases on issues approaching it appear to support the proposition that, in the absence of statements demonstrating release of all damages or that payment in to be in full satisfaction of an amount owing, there is no accord and satisfaction for the entire amount. For example, in Page & Jones v. Barry, 197 Ala. 449, 73 So. 22, 23 (Ala. 1916), subagents of an insurance agent tendered the insurance agent a check for the value of collected insurance premiums along with an itemized statement of premiums collected. When the agent sued to collect the remaining premiums, the subagents declared that acceptance of the check constituted accord and satisfaction of any claims pertaining to the remaining premiums.

---

whether there exists "a bona fide dispute as to the amount due, or an independent consideration, or written agreement, or a surrender of the evidence of the debt." O'Neal v. O'Neal, 284 Ala. 661, 663, 227 So.2d 430, 431 (Ala. 1969). In the present case, the amount of liability for damage to the boat was in dispute and no writing was procured. Again the only issue exists on the terms of the accord and whether it was meant to cover unnoticed damage to the *North Star* caused by the flare block slippage.

>The court, at plaintiff's request, instructed the jury as follows on this subject:
>>"The court charges the jury that the tender of the check accompanied by the statement in evidence, and that the cashing of the check by the plaintiff and the retention by the plaintiff of the proceeds thereof did not constitute a payment by defendants to plaintiff of premiums not collected, unless the jury is reasonably satisfied from the evidence that the plaintiff so accepted it."
>
>There was no error in the giving of this instruction. The plaintiff's evidence denied that the check was received, or was intended to be received, in full satisfaction as to the premiums not collected.

Id.

Similarly, in <u>Stewart v. Riley & Johnson</u>, 189 Ala. 519, 66 So. 488, 489 (Ala. 1914), the plaintiff sued to recover $50.00 owed for purchase of a machine, where defendant claimed that plaintiff's cashing of a check for $750.00 constituted accord and satisfaction for the claim.

>It was a question for the jury as to whether or not the check should have been for $800 instead of $750, and the trial court did not err in refusing the general charge for the defendant as to the item of $50, nor did the cashing of the check by the plaintiffs preclude or estop the plaintiffs from recovering the $50 if it was to have been paid.

Id. Because the matter of whether the agreement between Messrs. Alred and Garris was meant to cover subsequent damage is an unresolved matter of fact, the court will not grant summary judgment for the plaintiff on grounds that the policy is void with respect to the damage done by Garris Propeller Service.

II. THE TIME IT TOOK FOR INFORMATION ABOUT THE *NORTH STAR* TO REACH NORTH AMERICAN.

North American claims that because the Alreds waited too long to file a written notice of their claim it should not be obligated to pay for their loss. According to the plaintiff, the defendants were to give it immediate notice and, within sixty days, give sworn written proof of loss as to the damage. Taking as true the defendants' claims that North American was notified by phone within a week after the extent of the damage was discovered and that North American promptly sent an adjuster to investigate the claim, the court cannot agree with the plaintiff.

First, under Alabama law, a contract of insurance preconditioning recovery on "immediate" notice of loss by the insured requires the insured to give notice "within a reasonable time in view of the facts and circumstances of the case." <u>Pharr v. Continental Casualty Co.</u>, 429 So.2d 1018, 1019 (Ala.

8

1983). "If there are disputed facts or conflicting inferences that may reasonably be drawn from the evidence, 'the question of the reasonableness of a delay in giving notice is a question of fact for the jury.'" <u>Haston v. Transamerica Ins. Servs.</u>, 662 So.2d 1138, 1141 (Ala. 1995) (citing <u>Southern Ins. Guar. Co. v. Thomas</u>, 334 So.2d 879, 883 (Ala. 1976)). The circumstances of the case are that the defendants may not have discovered the extent of the damage to their boat until over six weeks after that damage occurred and that after discovering the damage, the defendants contacted their insurer by phone within a week. <u>Compare</u> <u>Id</u> (holding a two year delay without excuse unreasonable as a matter of law).

That the sworn proof of loss was not in writing is not detrimental to the Alreds' demands against the plaintiff. "[I]f the policy of insurance provides that notice of loss must be in writing, as where it stipulates for written notice, the requirement is binding upon the insured and the notice must be in writing at least in the absence of waiver or estoppel." <u>Alabama Farm Bureau Mut. Casualty Ins. Co. v. Teague</u>, 269 Ala. 53, 55, 110 So.2d 290, 292 (Ala. 1959). See <u>Alabama Farm Bureau Mut. Casualty Ins. Co. v. Cain</u>, 421 So.2d 1281, 1283 (Ala. 1982). The Alreds claim that North American's reaction to the notice of loss given it by phone — dispatching an adjuster to assess the damage claim — constituted a waiver of the requirement of written notice. In addition, the defendants argue, that in the past the plaintiff has compensated loss without requiring the submission of written proof of loss supports an inference of waiver.

> Generally, a provision of an insurance policy requiring the filing of a written claim or notice may be waived by any act or pattern of conduct by the insurer or its authorized agents which reasonably tends to create a belief in the mind of the claimant under the policy that notice or proofs of loss will be unnecessary. The question of whether or not the acts of the insurer or its agent invoked a waiver is one for the jury.

<u>Freeman v. Alabama Farm Bureau Mut. Casualty Ins. Co.</u>, 395 So.2d 1014, 1017 (Ala. Ct. Civ. App. 1981), <u>cert. denied</u>, 395 So.2d 1017 (Ala. 1981). See <u>Continental Auto Ins. Ass'n v. Traywick</u>, 211 Ala. 659, 101 So. 614, 614-15 (Ala. 1924) (holding that insurer's responding to incomplete written loss statement with request for more information constituted waiver). The plaintiff's dealings with the defendants are sufficient to raise a genuine issue of triable fact.

## Conclusion

For the foregoing reasons, the motion for summary judgment will be DENIED.

This ____ day of April 1998.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE